

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

FEB 1 0 2012

CLERK, U.S. DISTRICT COURT
by_____
            Deputy

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

RONALD HERNANDEZ,           §
                            §
         Movant,            §
                            §
                            §
VS.                         §   NO. 4:11-CV-698-A
                            §   (NO. 4:09-CR-072-A)
UNITED STATES OF AMERICA,   §
                            §
         Respondent.        §

MEMORANDUM OPINION
and
ORDER

Came on to be considered the motion of movant, Ronald

Hernandez ("Hernandez"), under 28 U.S.C. § 2255 to vacate, set

aside, or correct sentence, filed on October 3, 2011. The

government filed a response to the motion on December 16, 2011.

Hernandez filed a reply on February 2, 2012, and a document

titled "Petitioner's Traverse to the Government's Reply," on

February 3, 2012. Having now reviewed all of the parties'

filings, the entire record of this case, and applicable legal

authorities, the court concludes that the motion should be

denied.

I.

Background

The background of Hernandez's case, taken from the Pre-

Sentence Report[1] ("PSR") and the record, is as follows:

On May 3, 2009, the police responded to the emergency phone call of Margarita Hernandez ("Margarita"),[2] at the home she shared with Hernandez and their two children in Fort Worth, Texas. Margarita had reported in the call that Hernandez had beaten her with two guns and broken her nose, and that she was hiding in the bathroom while her husband was asleep on the couch. When the police arrived, Margarita met the officers at the front door and let them inside. The officers noticed that she suffered visible injuries to her face and body.

At the time of their arrival, Hernandez was still sleeping on the couch. The officers arrested Hernandez, removed him from the home, and placed him in the police car in front.

While Hernandez waited in the police car, the officers questioned Margarita about the incident. Margarita told officers that Hernandez had repeatedly beaten her with his fists and two guns and then broken her nose. Margarita also told officers that

---

[1] The Pre-Sentence Report ("PSR") prepared by the probation officer included information about the offense conduct that was obtained from the indictment, the superseding indictment, investigative reports prepared by the Fort Worth Police Department ("FWPD") and Special Agent Travis Riddle of the Alcohol, Tobacco, Firearms Agency, laboratory reports prepared by the FWPD Forensic Division, and through a personal interview with Special Agent Riddle. PSR at 2.

[2] Hernandez was the father of Margarita's two children, and she considered him to be her common-law husband.

2

Hernandez aimed the guns at her and their two children, a six-year-old and an eighteen-month-old, and threatened to kill them.[3] As Margarita described, the beatings began when Hernandez came home drunk the previous night and continued until he fell asleep on the couch. Several times during the beatings, Margarita stated, Hernandez discharged the guns. The six-year-old confirmed the chain of events as described by his mother.

Margarita also told officers that Hernandez kept and sold drugs in their home. The police sought permission to conduct a search, and Margarita gave her consent to search the home to locate the guns used in the assault. After Margarita provided consent, the six-year-old led police officers to a hallway closet that contained several guns and drugs and pointed to plastic bags of methamphetamine belonging to his father. In addition to the methamphetamine found inside the hall closet, the police search of the residence yielded a total of six firearms, drug paraphernalia, and $24,770 in cash.

Margarita also told officers about another property that she and her husband rented in Grand Prairie. She gave the officers her written consent to search and a key to the Grand Prairie

---

[3]Specifically, Hernandez aimed the gun at her face, placed the barrel of the gun to the chest and head of the oldest child, and placed the barrel on the infant child's head.

property. When the officers arrived at the Grand Prairie property, they knocked on the door several times and announced their presence, with no answer. After officers unlocked the door using the key Margarita gave them, they entered and discovered that the property was being used as a site to grow marijuana for sale. A total of 171 marijuana plants were found at the property.

Hernandez was subsequently charged in a four-count superseding indictment. On August 31, 2009, Hernandez was convicted by a jury of counts one through three for possession with intent to distribute methamphetamine, manufacture and possession of marijuana with intent to distribute, and possession of a firearm in furtherance of a drug trafficking crime, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A), (b)(1)(B), and 18 U.S.C. § 924(c)(1)(A)(i). Count four was dismissed.[4]

On December 15, 2009, the court sentenced Hernandez to a term of imprisonment of 405 months, to run consecutively to any sentence that may be imposed as part of any state court sentence, followed by a five-year term of supervised release. Hernandez appealed to the United States Court of Appeals for the Fifth Circuit, which affirmed his conviction on April 19, 2011. See

---

[4]Under count four of the superseding indictment, Hernandez was charged with being a prohibited person in possession of a firearm, in violation of 18 U.S.C. § 922(g)(9).

<u>United States v. Hernandez</u>, No. 09-11221, 422 F. App'x 386 (5th
Cir. 2009) (per curiam).  Hernandez filed the instant § 2255
motion on October 11, 2011, alleging that he was denied effective
assistance of counsel on numerous grounds.

II.

<u>Grounds of the Motion</u>

In his motion, Hernandez asserted six grounds for relief,
all of which fell under his umbrella claim for ineffective
assistance of counsel.  As to his trial counsel, Christopher
Curtis ("Curtis"), Hernandez complained that Curtis failed to
file a motion to suppress evidence from a search of Hernandez's
home; that Curtis improperly conceded Hernandez's guilt on count
three of the indictment; and that Curtis failed to ask for a
special jury verdict or to assert that Hernandez be sentenced on
the drugs that carried the lesser sentence.  As to his appellate
counsel, Jason Hawkins ("Hawkins"), Hernandez complained that
Hawkins's performance was deficient in failing to raise on direct
appeal the issue of trial counsel's errors.

III.

<u>Treatment of § 2255</u>

After conviction and exhaustion of any right to appeal,
courts are entitled to presume that a defendant stands fairly and

5

finally convicted.  <u>United States v. Frady</u>, 456 U.S. 152, 164

(1982); <u>United States v. Shaid</u>, 937 F.2d 228, 231-32 (5th Cir.

1991) (en banc).  A defendant can challenge his conviction or

sentence after it is presumed final only on issues of

constitutional or jurisdictional magnitude and may not raise an

issue for the first time on collateral review without showing

both "cause" for his procedural default and "actual prejudice"

resulting from the errors.  <u>Shaid</u>, 937 F.2d at 232.  Section 2255

does not offer recourse to all who suffer trial errors, but is

reserved for transgressions of constitutional rights and other

narrow injuries that could not have been raised on direct appeal

but, if condoned, would result in a complete miscarriage of

justice.  <u>United States v. Capua</u>, 656 F.2d 1033, 1037 (5th Cir.

1981).

IV.

<u>The Grounds of the Motion</u>

A.    <u>Ineffective Assistance of Counsel Claim</u>

The court now turns to the grounds of the ineffective

assistance of counsel claim asserted by Hernandez.  In its

analysis, the court will consider the complaints of trial

counsel's errors in combination with the parallel complaints of

appellate counsel's errors.

6

To prevail on a claim of ineffective assistance of counsel, Hernandez must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Both prongs of the Strickland test must be met to demonstrate ineffective assistance; however, both prongs need not be considered if movant makes an insufficient showing as to one. Id. at 687, 697. Judicial scrutiny of this type of claim must be highly deferential, and the movant must overcome a strong presumption that his counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689.

1.   Motion to Suppress Evidence From Search

The court will first consider Hernandez's claim concerning trial counsel's duty to file a motion to suppress and appellate counsel's duty to raise this issue on appeal. In his motion, Hernandez contends trial counsel failed in his duty to file a motion to suppress the evidence from the search of his Fort Worth home as a warrantless search prohibited by the Fourth Amendment. Mot. unnumbered pp. 8-13. And he further contends that his appellate counsel should have, but failed, to raise this error of

trial counsel as an issue on direct appeal.  Id. at 19-20.

Hernandez principally relies upon the Supreme Court's decision in Georgia v. Randolph, 574 U.S. 103 (2006), to argue that his consent to search was required "since he was a living occupant/lessee of the residence," and the police had unlawfully proceeded to search absent the requisite consent, Mot. 12th unnumbered p.  Hernandez alleges that the officers "disregard[ed] asking" for his consent after he had been arrested and placed in the police car; that they intentionally searched his home without asking for his consent; and that there "were no exigent circumstances to warrant a search."  Id.

The court, however, does not believe that a motion to suppress the search would have been successful under the Fourth Amendment.  When an ineffective assistance of counsel claim is based on defense counsel's failure to litigate a Fourth Amendment claim competently, "the defendant must also prove that his Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence in order to demonstrate actual prejudice." Ward v. Dretke, 420 F.3d 479, 488 n. 19 (5th Cir. 2005) (quoting Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)).  The inquiry turns on whether a hypothetical motion to suppress would have

been successful.  See United States v. Oakley, 827 F.2d 1023,
1025 (5th Cir. 1987).  Defense counsel cannot be faulted for
failing to raise what would have been a frivolous objection.
Sones v. Hargett, 61 F.3d 410, 415 n. 5 (5th Cir. 1995). "A
warrantless intrusion into an individual's home is presumptively
unreasonable unless the person consents or probable cause and
exigent circumstances justify the encroachment." United States
v. Jones, 239 F.3d 716, 719 (5th Cir. 2001) (citations omitted).
The government bears the burden of proving that either exigent
circumstances or consent justified a warrantless entry into the
home. Id.

In the seminal case, Georgia v. Randolph, the Supreme Court
held that an occupant's consent to the warrantless search of a
residence is not valid as to a physically present co-occupant who
expressly refuses consent.  547 U.S. at 122-23.  "[A] warrantless
search of a shared dwelling for evidence over the express refusal
of consent by a physically present resident cannot be justified
as reasonable as to him on the basis of consent given to the
police by another resident."  Id. at 120.  In Randolph, the
defendant unequivocally refused an officer's request for consent
to search his home.  Id. at 107. The officer then turned to the
defendant's estranged wife who consented to the search.  Id. at

9

107. The Supreme Court held that evidence discovered as a result of the search should be suppressed because "a physically present co-occupant's stated refusal to permit entry prevails [over the other occupant's consent], rendering the warrantless search invalid as to him." Id. at 106.

Randolph's holding, however, is inapplicable to Hernandez's case for two reasons. First, Randolph does not apply in circumstances where the police are responding to a domestic violence call concerning threats to the safety of a victim inside her home.[5] The Supreme Court expressly excluded as a "red herring" any suggestion that its limited rule would "shield[] spousal abusers and other violent co-tenants who will refuse to allow police to enter a dwelling when their victims ask the police for help." Id. at 117, 120. Randolph thus had "no bearing on the capacity of the police to protect domestic victims," or to "enter a dwelling to protect a resident from domestic violence." Id. at 118. Likewise in this case, the

---

[5]The Supreme Court emphasized that
so long as [the police] have good reason to believe such a threat exists, it would be silly to suggest that the police would commit a tort by entering, say, to give a complaining tenant the opportunity to collect belongings and get out safely, or to determine whether violence (or threat of violence) has just occurred or is about to (or soon will) occur, however much a spouse or other co-tenant objected. (And since the police would then be lawfully in the premises, there is no question that they could seize any evidence in plain view or take further action supported by any consequent probable cause.)
Randolph, 547 U.S. at 118 (citation omitted).

officers' search occurred in response to a call of domestic violence. When the police arrived, Margarita's visible injuries and her statements confirmed that she had been the victim of abuse. After interviewing her, the police properly obtained her consent to search the home for evidence of the guns used in the attack against her and the children.

Second, even if a domestic disturbance were not at play, Hernandez has not persuaded the court that he expressly refused to give consent to the search at the time of the officers' entry. Id. at 121. As the Supreme Court noted, Randolph's ruling did not disturb the force of prior holdings, which held that the police need not obtain the consent of a co-tenant who was sleeping at the time of the officers' arrival, Illinois v. Rodriguez, 497 U.S. 177, 179-80 (1990), or a co-tenant who was located nearby in a squad car, United States v. Matlock, 415 U.S. 164, 177, 179 (1974); Randolph, 547 U.S. at 121 (noting that "the potential objector, nearby but not invited to take part in the threshold colloquy [requesting consent to search], loses out"]); id. at 134, n. 1 (Roberts, J., dissenting). The record reflects, and Hernandez admits, that he "was asleep" when the police arrived and arrested him. Pet.'s Reply at 3. Even had Hernandez expressly objected while in the squad car, this objection would

11

have been valid only if he "[was] in fact at the door and [had] object[ed]." Randolph, 547 U.S. at 121.  To demonstrate the lawfulness of the search, the government "may show that permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected." Matlock, 415 U.S. at 171-72.  Hernandez's shared tenancy with Margarita meant he "assumed the risk" that she could allow the police into the home and show them where he kept his guns and drugs.  Id. at 171.

It is thus readily apparent to the court that the search of the home was lawfully conducted on the basis of Margarita's consent.[6]  Any objection or motion challenging the validity of the search on these grounds by either Hernandez's trial or appellate attorney would have been frivolous, and his counsel had no duty to mount such a futile challenge.  See Koch v. Puckett, 907 F.2d 524, 527 (5th Cir. 1990).  Accordingly, Hernandez has failed to present a Strickland claim based on the issue of his consent to the search.

2.  Hernandez's Guilt on Count Three of the Indictment

The court now turns to the next ground asserted by

---

[6]After Margarita consented to the search, Hernandez's six-year-old led the officers to the hall closet and drew their attention to the drugs inside. Although the government argues in its response that the child also gave consent to search, the court finds it unnecessary to delve into the issue of whether the child's consent was valid.  It is apparent to the court the search could be upheld solely upon Margarita's consent, which had already been obtained at that point.

Hernandez.   Hernandez argues that trial counsel conceded

Hernandez's guilt to the jury when Curtis "abandoned his duty to

represent" Hernandez and "sided with the government's theory of

the case on the count three charge."  Mot. unnumbered pp. 14, 16.

He also alleges appellate counsel failed in his duty to raise

this alleged error on appeal.  Id. at 21-22.

These arguments are completely negated by the record.  Count

three of the indictment charged Hernandez with possession of a

firearm in furtherance of a drug trafficking crime, in violation

of 18 U.S.C. § 924(c)(1)(A)(i).  At trial, Curtis repeatedly

emphasized to the jury that the government had not met its burden

to prove the drug trafficking element of count three.[7]  Tr., Vol.

III at 137-140.  On this point, Curtis argued:

> With respect to Count 3, I remind you . . . [the
> possession of the weapon has] got to be during and in
> relation to a drug-trafficking crime. . . . That did
> not happen in this case . . . . [T]here's plenty of
> doubt in this case.

Tr., Vol. III at 137-140.  Curtis also attacked the credibility

of the testimony from Margarita, argued about the absence of

_____

[7]Specifically, Curtis argued to the jury during closing argument:
Now, we know he possessed the weapon, ladies and gentlemen. You heard the
evidence of that. I understand that, but count 3 is possession of firearms during
and in relation to a drug-trafficking crime. And I'm telling you now that they
haven't proved that he participated in any drug-trafficking crime. And the
evidence in this case . . . shows there is no question. Somebody else was in that
house.
Tr., Vol. III at 137-140. Hernandez's quoting of this argument omits any mention of the
underlined portion of Curtis's argument that the drug-trafficking element was not proven. Mot. at
14th unnumbered p.

Hernandez's fingerprints on the physical evidence, and pointed to evidence suggesting the drugs belonged to other individuals with access to the two properties.  Id. at 137-140.

The record squarely refutes Hernandez's allegations that trial counsel conceded his guilt and "sided" with the government on count three of the indictment.  Trial counsel's arguments were reasonable, and appellate counsel did not err in deciding not to raise this issue on direct appeal.  The court therefore concludes that no Strickland claim exists on these grounds.

3.   Special Jury Verdict and Sentencing Argument

The court now turns to the allegations concerning the special jury verdict and sentencing argument.  In support of his claim, Hernandez complained that trial counsel "failed to argue for a special jury verdict on the two distinct drugs and argue that [he] be sentence[d] on the drug that carries the lesser [sentence]."  Mot. at unnumbered pp. 17, 22-23.  He contended that trial counsel "failed to get an instruction to lead the jury to convict on one or the other drug," and should have "asked the court for a special jury verdict as well as argued for his client to receive a sentence only under the marijuana offense."  Id. at 18th unnumbered p.

This claim is frivolous and again, squarely contradicted by

14

the record.   Trial counsel was under no obligation to object to the jury instructions or request a special verdict in the manner argued for by Hernandez.   The court is satisfied, after reviewing the record, that the jury was properly instructed about what the government must "prove as to each of the counts 1, 2, 3, and 4, for the defendant to be convicted."[8]   Tr., Vol. III at 156-62. Any objection by trial counsel, along with any attempt to raise this issue on direct appeal by appellate counsel, on the grounds suggested by Hernandez, would have been without merit.   His allegations are merely conclusory allegations devoid of any factual support.   See Miller v. Johnson, 200 F.3d 274, 282 (5th Cir. 2000).

As for the sentencing argument claim, that claim is frivolous as well.   Because the jury found Hernandez guilty of both the methamphetamine offense (count one) and the marijuana offense (count two), there was simply no basis for counsel to argue to the court that Hernandez should receive a sentence "only

---

[8] The record confirms that the court instructed the jury on the elements of each count that must be proven beyond a reasonable doubt and that the verdict had to be unanimous as to each count. Tr., Vol. III at 156-62.  The court explained that:

> A separate crime is charged by each count of the indictment.  Each count, and the evidence pertaining to it, should be considered separately.  The fact that you may find the defendant guilty or not guilty as to one of the crimes charged should not control your verdict as to any other.

Id. at 163.

under the marijuana offense." Mot. at 18th unnumbered p.
Hernandez is thus entitled to no relief because he has failed to
meet the standard set forth by <u>Strickland</u>.

V.

<u>CONCLUSION</u>
<u>and</u>
<u>ORDER</u>

For the reasons stated above, Hernandez's motion has raised
nothing but frivolous allegations that his Sixth Amendment right
to effective assistance of counsel was violated.

Therefore,

The court ORDERS that Hernandez's motion to vacate, set
aside, or correct sentence be, and is hereby, denied.

SIGNED February 10, 2012.

_____
JOHN McBRYDE
United States District Judge